[No. 15436.    Department Two.    July 22, 1919.]

THE STATE OF WASHINGTON, *on the Relation of Eureka Cedar Lumber & Shingle Company, Plaintiff,* v. THE SUPERIOR COURT FOR PIERCE COUNTY, *M. L. Clifford, Judge, et al., Defendants.*[1]

PROHIBITION (11)—REVIEW—ERRORS AND IRREGULARITIES.    Upon application for a writ of prohibition to prevent the discharge of a vessel by substituting a bond in lieu thereof for the protection of lien claimants, the supreme court will not consider errors of·the trial court in fixing the amount of the bond or other security for the payment of claims or receiver's and attorney's fees and disbursement, since they are merely errors occurring in the exercise of jurisdiction that may be corrected by appeal.

MARITIME LIENS (12-16)—ENFORCEMENT—SUBSTITUTION OF BOND. The court, in virtue of its inherent equity power, has jurisdiction, in a pending action to foreclose liens for the construction of a ship, to release the property and substitute therefor a deposit of money or a bond; the statute, Rem. Code, § 1182, simply providing that the liens may be foreclosed in a civil action, and being silent as to the matter of substitution of security.

Application filed in the supreme court June 27, 1919, for a writ of prohibition to the superior court for Pierce county, Clifford, J., to prevent certain acts in receivership proceedings.    Denied.

*W. H. Abel,* for relator.

*Grinstead & Laube,* for defendants.

FULLERTON, J.—This is an application made originally in this court for a writ of prohibition against the superior court of Pierce county requiring it to desist and refrain from certain described acts in a receivership proceeding.    An alternative writ was issued upon the filing of the application, to which the trial court has made return.    The cause is before us

[1]Reported in 182 Pac. 607.

on the question whether the alternative writ shall be made peremptory.

The record in this court is in many respects incomplete and unsatisfactory, making the pertinent facts somewhat difficult to gather. The facts are, however, as we understand them, in substance, these: The defendant Martinolich Ship Building Company, a corporation organized under the laws of this state, contracted to build for the Dockton Motorship Company, a corporation organized in another state, a steam schooner. The vessel was partially completed by the Martinolich Company at its own yards in Pierce county, after which it was moved to the yards of the Foundation Company, in the same county, where work thereon was continued by the Dockton Motorship Company; the Martinolich Company in the meantime having become insolvent. During the time the Martinolich Company had possession of the vessel it incurred large obligations to divers persons for materials used in the vessel's construction, which it did not meet, among which was an obligation to the applicant herein, the Eureka Cedar Lumber and Shingle Company. The Eureka Company claims the balance due on the account to be $7,604.12, although the amount is disputed by the owner of the vessel. On May 3, 1919, the applicant, claiming a lien upon the vessel under the provisions of § 1182 of the code (Remington's), began an action in the superior court of Pierce county to recover the sum named and to foreclose the lien. It made parties defendant the Martinolich Company, one Egil Naesheim, and the Dockton Motorship Company. In its complaint it alleged facts showing the obligation of the Martinolich Company to it, its right of lien on the vessel, the insolvency of the Martinolich Company, and further alleged that the vessel was then exposed to the weather and was deteriorating on account

thereof, and that such deterioration would amount, during the summer season of 1919, to forty per cent of the actual value of the vessel; that the vessel was only partially completed; that there was no adequate fire protection for the vessel and that its security was subject to serious loss, risk and hazard. It alleged that there were numerous other materialmen having unpaid claims for materials furnished and which were used in the construction of the vessel; that work had ceased on the vessel and that there was no likelihood of such work being resumed. It further alleged that an emergency existed for the appointment of a receiver.

At the time of the filing of the complaint, there was also filed by the attorney representing the plaintiff the answer of the Martinolich Company, which answer admitted all of the allegations of the complaint and joined in the prayer for the appointment of a receiver. On the showing made, the trial court appointed a receiver, fixing his bond in the sum of $5,000, and directing that he forthwith take possession of the vessel. It was further ordered that the defendants appear before the court on June 4, 1919, and there show cause, if any they had, why the appointment of the receiver should not be confirmed and his appointment continued in force until the final hearing of the cause.

The receiver qualified by giving the bond directed and immediately took possession of the vessel, appointing a keeper therefor whom he contracted to pay at the rate of five dollars per day. On June 28, 1919, the receiver made a report to the court to the effect that he found representatives of the owner of the vessel in its possession doing work thereon looking to its completion, and "having no desire to inconvenience the owner, has permitted the representatives of said owner to continue said work of completing said vessel,

but subject, however, at all times, to the possession
and control by your receiver," estimating that the
time required for the completion of the vessel would
be about three weeks. The receiver further reported
that there were valid liens and claims against the vessel
in the neighborhood of $40,000; that he believed that
such claims would be adjusted and paid by the owners
before any great length of time, but believed it unsafe
to allow the vessel to go uninsured, and therefore
prayed that he be authorized to insure it as the rep-
resentative of the creditors, in the sum of $50,000.
On the filing of the report, the court made an order
confirming the receiver's acts, and directing that he
insure the vessel in the sum named. This order was
made without notice to the owner of the vessel or to
the owner's representatives found in its possession.
On June 4, 1919, the owner appeared in the proceeding,
at which time, by agreement of the parties, the hearing
on the question whether the temporary appointment
of the receiver should be made permanent was con-
tinued until June 19, 1919.

Between the time of the commencement of the
action and June 19, 1919, a number of persons obtained
leave of court and intervened in the action, claiming
obligations due them from the Martinolich Company
for materials and labor furnished and used in the
construction of the vessel, the several amounts of
which they asked to have decreed to be a lien upon the
vessel and that the vessel be sold in satisfaction
thereof. These claims aggregated $18,859.33.

On June 19, 1919, a hearing was had on the show
cause order of the court, at which time the Dockton
Motorship Company moved to quash the order ap-
pointing the receiver on the ground that it was made
upon a "fraudulent and collusive showing." The
court did not rule upon the motion directly. It found

from the evidence given at the hearing that certain of the claims had been paid, leaving a balance of $18,094.34; that of this sum the claim of George Broom for $4,000 was not due because he had not completed the contract on which the same was payable, and that the owner was willing to deposit the sum in court to be paid to Broom when the same should be earned; that the remaining claims were disputed by the owner, and that the owner offered in open court to give a bond in such sum as the court might fix, with sureties to be approved by the court, conditioned to pay to the claimants such sums as the court might adjudge to be due thereon, together with their proper costs and charges. In addition to the foregoing recitals, it appeared that the owners had expended in excess of the sum of $360,000 in constructing the vessel; that it was nearing completion and was, or could be, chartered for ocean-going freight, and that to tie up the vessel pending the determination of the plaintiff's and interveners' actions would cause the owners great and irreparable losses. The court thereupon made and signed the following order:

"(1)   That the clerk of this court be, and he hereby is, instructed and directed to cause to be certified and retain the said check payable to George Broom, in the said sum of four thousand ($4,000) dollars, until further order of this court.

"(2)   That upon the defendant Dockton Motorship Company filing a bond herein in the penal sum of eighteen thousand ($18,000) dollars, with surety to be approved by this court, payable to the clerk of this court for the benefit of the plaintiff and the intervenors herein, who have filed complaints in intervention herein as their respective interests may appear, and conditioned for the payment of any claims of any and all of the above named lien claimants and intervenors, including the plaintiff herein, hereafter adjudged to have liens against the motor-schooner 'Dockton'

upon their several claims as filed herein, together with any costs taxed in favor of said respective claimants and of any costs in this action hereafter adjudged to be payable by said Dockton Motorship Company, including the costs of receivership, if any, hereafter adjudged against said Dockton Motorship Company, and upon said surety or sureties upon said bond entering their general appearance in writing in this action, the order to show cause herein shall be thereby forthwith cancelled and annulled, and said A. R. Titlow, named as receiver in said order of this court of May 23d, 1919, shall surrender and deliver to the defendant Dockton Motorship Company all of the property heretofore seized and held by him as such receiver in this action.

"(3) That all matters pertaining to the validity of the appointment of said receiver by the order of May 23d, 1919, and of all costs arising thereunder, are reserved for subsequent adjudication, the defendant Dockton Motorship Company having waived none of its objections to the validity of such appointment, and that the filing of bond and the entering of appearance by the surety or sureties herein shall not constitute or be deemed a waiver on the part of the Dockton Motorship Company of any of its objections heretofore entered to the appointment of the receiver under the order of May 23d, 1919, to all of which the plaintiff excepts and its exception is allowed; to all of which the respective intervenors except and exceptions allowed."

The hearing in this court upon the return took a somewhat wide range. Not only is the power of the court to discharge the vessel from the liens of the claimants by substituting a bond in lieu thereof questioned, but it is claimed that the bond is insufficient in amount to meet the claims should they be adjudged valid obligations. Especially is it argued that no provision is made to meet the disbursements by the receiver, made under the express orders of the court, or his fees or the fees of his counsel, should it be ad-

judged that he was not inadvertently appointed; and that the deposit in favor of Broom covers only the face of his claim, making no provision for his costs and disbursements already expended, or such disbursements as may thereafter occur in the prosecution of his claim. But we think it manifest that these latter questions are not now before us. If the court had jurisdiction to make the order of substitution, these are mere errors occurring in the exercise of jurisdiction which it is not the office of a writ of prohibition to correct. The writ of prohibition, under our practice, arrests the proceedings of a trial court only where such court is acting without or in excess of its jurisdiction and there is no plain, speedy and adequate remedy in the ordinary course of law. Rem. Code, §§ 1027, 1028. For errors occurring in the exercise of jurisdiction, the remedy is by appeal, or, if the remedy by appeal be inadequate, by a writ of review.

The question before us, therefore, is a narrow one— has the court, in a pending action to foreclose a lien upon personal property, power to release the property from the lien by substituting therefor a deposit of money or a bond. We think it can, and this in virtue of its inherent equity power. Since the relator by its action has invoked the equity powers of the court (*Washington Iron Works Co. v. Jensen,* 3 Wash. 584, 28 Pac. 1019; *Thompson v. Allen,* 56 Wash. 582, 106 Pac. 173, 134 Am. St. 1124), the court can compel it to do equity, and certainly it is doing nothing more than compelling it to do equity to compel it to accept another form of lien for the lien it has, when to refuse would compel the owner of the property either to forego its right to contest the justness of the claim or submit to a loss for which it has no means of redress. After all is said, the purpose of the statute is to afford laborers and materialmen, furnishing labor

and material used in the construction of a vessel, security for the obligation due them. They suffer no loss, therefore, when other adequate security is made available to them. While, on the other hand, as this particular case illustrates, serious and irreparable losses may be occasioned the owner of the vessel if the form of the security may not be changed.

It is true, as the relator says, the statute does not expressly permit a substitution of liens. But it can be said with equal truth that the statute does not prohibit it, and the most that can be claimed in this regard is that the statute is silent in the matter. The contention would have force had the statute prescribed a procedure for the enforcement of such liens; it could then be contended that the remedy of the statute was exclusive. But the statute does not do this. It simply provides that the lien may be foreclosed in a civil action brought in the superior court. This, as we have shown, must be an action of equitable cognizance, which is governed by the equitable rules pertaining to such actions.

We find nothing in the case of *Kalb-Glibert Lumber Co. v. Cram,* originally determined in 57 Wash. 550, 107 Pac. 381, and afterwards reversed in part in 60 Wash. 664, 111 Pac. 1050, which militates against the conclusion here reached. But it is needless to pursue the inquiry. Our conclusion is that the court had power to make the substitution it did make; and that the question whether the substitution made was adequate, or otherwise free from error, cannot be brought before us for review in this form of procedure.

The temporary writ is quashed and a peremptory writ denied.

Holcomb, C. J., Tolman, Parker, and Bridges, JJ., concur.